In re Gary GAMBILL, and Karen Gambill, Debtors.

Gary and Karen Gambill, Plaintiffs

v.

Consumer Recovery Associates, Barclays Bank of Delaware, Defendants.

Bankruptcy No. 3:09–bk–11238.
Adversary No. 3:10–ap–01193.

United States Bankruptcy Court, E.D. Arkansas, Jonesboro Division.

June 18, 2012.

Joel G. Hargis, Crawley & DeLoache, PLLC, Jonesboro, AR, for Plaintiffs.

Michael Dean DeFrank, Wyrick, Robbins, Yates & Ponton, LLP, Raleigh, NC, Roger McNeil, Womack Law Firm, Jonesboro, AR, for Barclays Bank of Delaware.

A. Jan Thomas, Jr., Chapter 7 Trustee.

### ORDER DENYING MOTION TO SET ASIDE DEFAULT JUDGMENT

AUDREY R. EVANS, Bankruptcy Judge.

Now before the Court is the *Motion to Set Aside Default Judgment* ("**Motion to Set Aside**") filed by the Defendant, Barclays Bank of Delaware ("**Barclays**"), on February 27, 2012.[1] The Plaintiffs, Gary

1. During the hearing on this matter, the Court took judicial notice that Barclays was formerly Juniper Bank. It was understood that any reference by the parties to Juniper Bank was a reference to Barclays.

and Karen Gambill, filed a *Response to Defendant Barclays Bank Delaware's Motion to Set Aside Default Judgment and Combined Brief in Support* ("**Response**") on March 29, 2012, and Barclays filed a *Reply* on April 9, 2012. The Court held a hearing on this matter April 12, 2012. After reviewing the arguments and evidence submitted during the hearing, and for the reasons stated herein, the Court denies Barclays's Motion to Set Aside.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has jurisdiction to enter a final judgment in this case.

## FACTS

The Plaintiffs filed a Chapter 7 bankruptcy case on February 24, 2009. The Plaintiffs received a discharge in that bankruptcy case on June 24, 2009, and the case was closed a few days later. On August 12, 2010, the Plaintiffs' Bankruptcy case was reopened to allow them to pursue an adversary proceeding.

The Plaintiffs filed this adversary proceeding on September 13, 2010, claiming that Barclays violated the discharge injunction, 11 U.S.C. § 524, the automatic stay, 11 U.S.C. § 362, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq.[2] According to a certificate of service filed on the docket, a Summons and copy of the Complaint were mailed to Barclays on November 18, 2010, at the following address:

Barclays Bank Delaware
c/o Lloyd M. Wirshba, CEO
Corporate Headquarters
100 South West Street
Wilmington, DE 19801

The Summons stated that Barclays had until December 17, 2010, to answer the Complaint.

On April 15, 2011, approximately four months after the deadline to answer the Complaint had expired, the Plaintiffs filed a *Motion for Entry of Default*. A certificate of service attached to the Motion for Entry of Default certifies that the Plaintiffs sent Barclays a copy of the motion. The *Entry of Default* was entered by the Court on April 19, 2011. An entry on the docket reflects that the Bankruptcy Noticing Center ("**BNC**") sent Barclays a copy of the Entry of Default on April 21, 2011. The Plaintiffs filed a *Motion for Default Judgment* on April 29, 2011. A certificate of service attached to the Motion for Default Judgment states that the Plaintiffs mailed Barclays a copy of the motion. The Court originally set the hearing on the Motion for Default Judgment for July 14, 2011. An entry on the docket reflects that BNC sent Barclays notice of the hearing on the Motion for Default Judgment on May 19, 2011. The hearing on the Motion for Default Judgment was continued three times. Every time the hearing was continued, BNC sent Barclays a notice of the new hearing date for the Motion for Default Judgment.

### Evidence from Hearing on Motion for Default Judgment

The Court held a hearing on the Motion for Default Judgment on October 6, 2011. The Plaintiffs appeared at the hearing and presented testimony. Barclays did not appear. At that hearing, Mr. Gambill testified that he had received calls from Barclays after the discharge of their bankruptcy case:

Q. After the bankruptcy was completed, how long did it take for you to

---

**2.** The Complaint was originally filed against Juniper Bank. The Plaintiffs amended the Complaint on November 17, 2010, to substitute Barclays for Juniper Bank after discovering that Juniper Bank had changed its name to Barclays.

start receiving collection calls on this particular debt?

A. About three months. Not long.

Q. ... Was it Juniper or Barclays that was calling you, or was it collection agencies?

A. Both.

...

Q. It was actually Juniper Bank calling you?

A. Yes, sir. I would get a phone call with a number and a case number to call back.

Q. Ok.

A. And anytime I called that back, I got a hold of Juniper Bank until the last time they called in August—I think it was the 31st—they said it was Barclays Bank.

(October 6, 2011 Hrg. Tr. 13, 16). Mr. Gambill testified that he would try to explain to the callers that the debt had been discharged in the bankruptcy, but that the callers would respond that his attorney had not filed the bankruptcy correctly (October 6, 2011 Hrg. Tr. 16), or that God would want him to pay the debt (October 6, 2011 Hrg. Tr. 18), or that they were going to file a lawsuit against him (October 6, 2011 Hrg. Tr. 19).

The Plaintiffs also testified that they had suffered as a result of the physical harm and mental distress caused by the calls they were receiving on the debt. Mr. Gambill explained that prior to the bankruptcy he had been diagnosed with depression, and an anxiety disorder, and that he took medication for these problems. (October 6, 2011 Hrg. Tr. 14). He testified that after the bankruptcy, he had started to come off of his medications, but that as soon as he started receiving the collection calls, he had to start taking the medications more often. (October 6, 2011 Hrg. Tr. 15). He testified that any time he would receive a call about the debt, his blood pressure and anxiety would increase dramatically. (October 6, 2011 Hrg. Tr. 18) ("I never knew anything about anxiety until this.").

Mrs. Gambill's testimony at the October 6, 2011 hearing coincided with, and further affirmed, Mr. Gambill's testimony. She similarly testified that they had received calls from Juniper Bank about the debt. (October 6, 2011 Hrg. Tr. 23). She similarly testified that the callers requested payment from them despite being informed of the bankruptcy case. (October 6, 2011 Hrg. Tr. 24) ("Q: [I]s that your interpretation of what they've said? A: Yeah. 'You owe this debt. You need to pay it.' "). Furthermore, Mrs. Gambill explained the impact that the calls have had on her husband's health and their marriage relationship:

Q. What effects has this had that you can see on your husband, on his medical condition and on his—well, that effects to [sic] him personally, his characteristics and his personality?

A. He's very angry, very upset. You know, short tempered. His blood pressure, he'll come home at night, and you can tell. He's red faced, you know, and anxiety. He just can't do the things that he used to be able to do, you know, because he'd be so upset. You know, he'll go outside and sit and not talk with us. You know, it's just made him a very unhappy person.

...

Q. Has this had an effect on your relationship?

A. Oh, yeah. We fight about it quite often.

(October 6, 2011 Hrg. Tr. 25–26).

### Default Judgment

At the conclusion of the hearing on the Motion for Default Judgment, the Court

found that Barclays had violated the discharge injunction. As damages, the Court awarded the Plaintiffs $25,000—the full amount requested in the Complaint—as compensation for the actual harm and emotional distress they suffered as a result of the violations. With regard to the damages amount, the Court stated:

> The Debtors have put on testimony, which the Court finds to be clear evidence of actual damage and harm and emotional distress. And the Debtors have stated through their attorney that compensation for this harm would be $25,000. The Court finds that to be a reasonable amount to award to the Debtors as compensation for their emotional distress, the anxiety, the harm to their health, the harm to their way of life, the harm to their entire being. In case I didn't make it clear, I find that Barclays did this willfully, knowingly. They violated the 524 injunction. They violated the Court order.

(October 6, 2011 Hrg. Tr. 35–36). On October 19, 2011, the Court entered the *Default Judgment* on the docket, specifically stating that:

> The Defendant has willfully and knowingly engaged in conduct that caused the Plaintiffs to suffer actual damages, including emotional distress, and was intended to harass the Plaintiffs until they paid the discharged debt in violation of 11 U.S.C. § 524.... The Court awards $25,000 in damages to the Debtors as reasonable compensation for the actual harm they suffered as a result of the Defendant's actions.

(Default Judgment, p. 2). BNC sent notice of the Default Judgment to Barclays on October 21, 2011.

### Motion to Set Aside

On February 27, 2012, Barclays filed this Motion to Set Aside, and the Court held a hearing on that motion on April 29, 2012. At the hearing on the Motion to Set Aside, Barclays's counsel made his appearance in the case, but did not bring a witness to testify. Barclays asked the Court to accept affidavits in lieu of witness testimony. Plaintiffs' counsel objected on the basis that the affiants would not be available for cross examination. The Court sustained the Plaintiffs' objection.[3]

Following the Court's ruling, Barclays requested a continuance so that a witness could be made available to testify to the information in the affidavits. This placed the Court in an uneasy dilemma. On one hand, denying the continuance meant Barclays would be unable to present a large amount of the evidence on which its arguments were based. On the other hand, granting the continuance would encourage the notion that a party may have unlimited opportunities to present their case. In other words, the Court was required to "strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done." *Harley v. Zoesch,* 413 F.3d 866, 870 (8th Cir.2005) (*citing* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2851, at 227 (2d ed.1995)). Based on the facts and procedural history of this particular case, the Court concluded that it would work an injustice on the

---

**3.** The Court was flummoxed by Barclays's proffer of affidavits in lieu of testimony. Although affidavits are an accepted part of the summary judgment process, there is no local rule or general order of this Court, or provision in the Federal Rules of Bankruptcy Procedure, that would allow the submission of affidavits in lieu of testimony at a hearing. At a hearing, the parties are expected to appear prepared to offer evidence in the form of witness testimony. Barclays's failure to do so at a hearing on a motion to set aside a default judgment was without excuse.

Plaintiffs, and our judicial system, to allow a continuance at this stage of the proceedings and on the basis presented. Barclays had been given a final opportunity to present its case through the hearing on the Motion to Set Aside. Its failure to provide a witness to present that case did not warrant a further continuance of this matter. The Court denied that request for a continuance.

The only witness available to testify at the hearing on the Motion to Set Aside was one of the Plaintiffs, Mrs. Gambill.

### Evidence from Hearing on Motion to Set Aside

At the hearing on the Motion to Set Aside, Barclays questioned Mrs. Gambill about the collection calls she had received, and about her testimony at the hearing on the Motion for Default Judgment. Mrs. Gambill testified the collection calls on this debt had stopped around 2007, only to resume again after the bankruptcy case was closed. (April 12, 2012 Hrg. Tr. 63, 82). In response to questioning about her statement that the calls had come from Barclays, Mrs. Gambill explained that the calls were from collection companies:

Q. Okay. And so, when the calls resumed, your testimony is they identified themselves as Juniper or Barclays, correct?

A. Yes.

Q. But, in fact, you don't know for a fact that they were Juniper or Barclays, correct?

A. No, but they always mentioned either one of those names each time they called. And I—then I knew who they were. When they identified the collection name, recovery whatever, I didn't know who they were, and I said what is this concerning, and that's when they would bring them—you all up.

. . .

Q. But they identified themselves when they called as Acme Collection Company—I'm using that term generically—but some other company besides Barclays or Juniper, correct?

A. Yes.

(April 12, 2012 Hrg. Tr. 63–65). Barclay's attorney managed to get Mrs. Gambill to testify that she was aware that the account had been sold by Barclays:

Q. Well, in fact, your account was sold on December 4, 2007, wasn't it?

A. That, I did not know until all this [came] through.

Q. But now you understand that it was sold December 4, 2007, don't you?

A. Yes, I do now.

(April 12, 2012 Hrg. Tr. 61–62). However, Mrs. Gambill's testimony was that this was not made clear to her by any of the collection calls, and that it was only through this adversary proceeding that she was informed that the account had been sold:

Q. How do you know whether the debt they were collecting on was purchased by them or if they were simply collecting?

A. They didn't tell us that they purchased. They just said they were there for Jupiter [sic] or Barclays. They never said it's our debt, you know, that we're trying to get from you.

Q. Before today's date, how did you know that Barclays had sold the debt in—had allegedly sold the debt in 2007?

A. When we [came] to court.

(April 12, 2012 Hrg. Tr. 75). Mrs. Gambill also stated, consistent with her testimony at the hearing on the Motion for Default Judgment, that she and her husband had settled their debt with Barclays in full under the agreement made in 2006, and

that she only listed the debt on the bankruptcy because it was on their credit report. (April 12, 2012 Hrg. Tr. 82).

In addition to Mrs. Gambill's testimony, Barclays presented evidence of an agreement the Plaintiffs had entered into with Barclays called a Fee Waiver program. Barclays provided evidence of the Fee Waiver program through multiple exhibits, including: (1) a letter from Barclays to the Plaintiffs, dated May 19, 2006, confirming their participation in the Fee Waiver program, requiring them to make certain payments over a period of three months, and excusing the incurrence of certain fees during that time; (2) three of the Plaintiffs' bank statements showing payments in the amount of $54 to Barclays on May 18, 2006, June 16, 2006, and July 17, 2006; and (3) a letter from Barclays to the Plaintiffs, dated August 13, 2006, confirming that they had "successfully completed the Fee Waiver program . . . ." (Exhibits G, H, 3, 4, and 5). These documents were produced in order to prove that the agreement entered into between Barclays and the Plaintiffs in 2006 was not a full settlement of their debt, but instead allowed the Plaintiffs to avoid paying certain fees and charges. After reviewing these facts and the arguments of the parties, as further discussed herein, the Court has determined that Barclays's Motion to Set Aside should be denied.

## DISCUSSION

■ Barclays's Motion to Set Aside is brought before the Court pursuant to Fed. R. Bankr.P. 9024, which incorporates Fed. R.Civ.P. 60. Pursuant to Fed.R.Civ.P. 60(b):

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

. . .

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

. . .

(6) any other reason that justifies relief.

The decision to grant or deny a motion to set aside a default judgment under Fed. R.Civ.P. 60(b) is within the sound discretion of the bankruptcy court. *In re Emmons,* 349 B.R. 780, 787 (Bankr.W.D.Mo. 2006). The defaulting party has the burden of proof. *Id.*

Barclays makes five arguments under Fed.R.Civ.P. 60(b) in support of its position that the Default Judgment entered in this case should be set aside. First, under Fed.R.Civ.P. 60(b)(4), Barclays argues that the service of process was invalid because the person served was not an "officer," as is required by the rule for obtaining service on a bank. Second, under Fed. R.Civ.P. 60(b)(1), Barclays argues its failure to respond was excusable neglect because of errors in the processing of its mail. Third, Barclays argues that it has a meritorious defense to the action. Fourth, under Fed.R.Civ.P. 60(b)(3), Barclays argues that the Default Judgment should be set aside because it is based on a misrepresentation by the Plaintiffs. And fifth, under the catchall provision of Fed. R.Civ.P. 60(b)(6), Barclays argues that the Default Judgment should be set aside because allowing the Default Judgment to stand would be inequitable. The Court finds that each of these five arguments fails because of the lack of evidence provided in support of those arguments. As further explained below, the Court denies the Motion to Set Aside.

### Invalid Service of Process

■ Barclays's first argument for setting aside the Default Judgment is that the Court lacked personal jurisdiction over Barclays in this case because the Plaintiffs failed to serve an officer of Barclays. Fed. R.Civ.P. 60(b)(4) authorizes the Court to set aside a judgment where "the judgment is void." This includes a judgment entered without personal jurisdiction over the defendant for lack of service of process. *Printed Media Servs., Inc. v. Solna Web, Inc.,* 11 F.3d 838, 843 (8th Cir.1993). Fed. R. Bankr.P. 7004(h) requires service of process to an "insured depository institution" to be made by "certified mail addressed to an *officer* of the institution. . . ." Fed. R. Bankr.P. 7004(h) (emphasis added). Barclays argues that the Plaintiffs failed to serve one of its officers.

■ On November 18, 2010, Plaintiffs' counsel filed a verified certificate of service stating that the Summons and Complaint were sent by certified mail to the following address: Barclays Bank Delaware, c/o Lloyd M. Wirshba, CEO, Corporate Headquarters, 100 South West Street, Wilmington, DE 19801. That certificate of service identifies an officer for Barclays with the position of CEO, and no argument was made that the physical address listed on the certificate of service was incorrect. As such, absent evidence to the contrary, the verified certificate of service establishes that the Summons and Complaint were served on an officer of Barclays. *See In re Emmons,* 349 B.R. at 787 ("It is well settled that the law presumes that correspondence properly addressed, stamped and mailed was received by the individual to whom it was addressed."); *In re C.V.H. Transport, Inc.,* 254 B.R. 331, 334 (Bankr. M.D.Pa.2000) ("[I]t is indeed reasonable to assume that a properly addressed envelope, directed to a corporation and the attention of an officer or agent as identified in Rule 7004(b)(3) will, in fact, be delivered to the proper person charged with responding to service of an important document.").

■ Barclays's argument that service was not proper is: Mr. Wirshba was not serving as an officer at Barclays at the time of service. Although no evidence was provided to establish that Mr. Wirshba was not Barclays's CEO at that time of service, the Court would reach the same result on the facts of this particular case even if Barclays had established that Mr. Wirshba was not an officer. The Court agrees with the reasoning set out in the case of *In re Outboard Marine Corp.,* 359 B.R. 893, 900 (Bankr.N.D.Ill.2007). In that case, the court made the following statements while examining a similar "service on an officer" requirement for providing service to a corporation:

> In order for a plaintiff to ascertain an officer or managing or general agent of a corporation, he must do a search of state records. Some corporations do not keep those records updated, and frequently, officers change during a company's fiscal year without the immediate updating of the annual report filed with the secretary of state to reflect those changes. In such a scenario, if a plaintiff was to list "John Doe" as the officer or managing or general agent of a corporation, and John Doe was no longer in that capacity because the corporation failed to update its records, service of process would be defective under this logic. Inaccurate corporate records would unfairly render otherwise adequate and proper service invalid. The Court rejects the argument that Bankruptcy Rule 7004(b)(3) requires a plaintiff to take the extra step of searching state records in order to ascertain the specific name of a corporate officer or managing or general agent, and then serve that individual by name as such

officer or agent. **The plain language of the Rule requires only that the mailing be directed to the attention of the officer or agent by reference to his position or title, not by reference to his name.** The present text of the Rule makes no such requirement. If the drafters of Bankruptcy Rule 7004(b)(3) intended for a plaintiff to serve an officer or agent by name, they could have included the necessary language. Instead, as noted by the court in *C.V.H. Transport,* those drafters rejected the notion that the officer or agent be named in the address. [*In re C.V.H. Transport,* 254 B.R. 331, 333 (Bankr. M.D.Pa.2000) ].

*In re Outboard Marine Corp.,* 359 B.R. at 900–01 (emphasis added). Although *In re Outboard Marine* dealt with service on an officer of a corporation,[4] the same interpretation should apply when the requirement is to serve an officer of an insured depository institution, pursuant to Fed. R. Bankr.P. 7004(h).

Following the reasoning set out in *In re Outboard Marine,* the Court is persuaded that service was proper on the facts of this case. The address to which the Summons and Complaint were mailed specifically directed the mailing to the attention of the CEO. The Court finds the mailing was directed to the attention of Barclays's CEO, be that Mr. Wirshba, or a successor to his position. The Court concludes that service of process in this case was proper, and that the Court had personal jurisdiction to enter the Default Judgment against Barclays. Therefore, the Court denies Barclays's request to have the Default Judgment set aside for lack of personal jurisdiction.

### *Excusable Neglect*

■ Barclays's second argument that the Default Judgment should be set aside is that its failure to respond to the Complaint was due to excusable neglect. The Court may set aside a default judgment on the basis of "excusable neglect." Fed. R.Civ.P. 60(b)(1). In *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993), the United States Supreme Court concluded that the determination of what neglect is excusable is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." In *Pioneer,* the United States Supreme Court established four factors, now known as the *Pioneer* factors, to be evaluated in determining excusable neglect. "The equitable factors that a court must weigh when determining whether neglect is excusable include: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *In re Emmons,* 349 B.R. at 788.

Barclays argues that its failure to respond was excusable neglect because its system for receiving and processing mail prevented it from becoming aware of the lawsuit. The Court is unable to consider this assertion, however, because it is nothing more than exactly that—an assertion, unsupported by evidence. The evidence in the record shows that this adversary proceeding has been ongoing since September of 2010, and during that time, Barclays was provided the Summons and Complaint and eight additional notices regarding this

---

4. Fed. R. Bankr.P. 7004(b)(3) governs service on a corporation, and states that service can be obtained "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent...."

case. Despite these notices, Barclays failed to appear in this case until after the Default Judgment was entered, more than a year after it was served with the Complaint. Barclays did not provide any evidence to explain what happened to the Summons, Complaint, or other notices mailed to it in this case. As such, the evidence in the record does not support a finding of excusable neglect.

■ What is more, even if Barclays had offered evidence, the errors in its mail processing system would not have constituted excusable neglect under a review of the *Pioneer* factors. First, the errors in its mail processing system do not provide a justifiable "reason for the delay." As an entity that collects payments on loans through the mail, Barclays must equip itself with a mail processing system that is reliable and effective. Where that system has failed to the point of allowing nine different notices to go unreviewed, the neglect has moved beyond excuse, and the entity that created the system must bear the burden of its deficiencies. Nor would the *Pioneer* factors of the "length of the delay" or "prejudice to the debtors" have weighed in Barclays's favor. The Plaintiffs filed bankruptcy to obtain a fresh start in February of 2009. They were granted that fresh start, and their bankruptcy case was closed. Some months later, when they began receiving the collection calls, the Plaintiffs were required to reopen their bankruptcy case; file this adversary proceeding; and testify at the hearing on the Motion for Default Judgment. Finally, in October of 2011, more than two years after the debt was discharged, they obtained a judgment enforcing the discharge injunction on the debt. It was February 27, 2012, before Barclays responded by filing this Motion to Set Aside, once again requiring the Plaintiffs to return to this Court to obtain relief from the debt. Based on these facts, the Court finds that the "length of the delay"

and "prejudice to the debtors" would weigh heavily in the Plaintiffs' favor. Although the Court is unable to analyze Barclays's "good faith" in this matter without greater evidence, such analysis is unnecessary since the other *Pioneer* factors weigh so conclusively and heavily in the Plaintiffs' favor.

The Court concludes that even if Barclays had provided evidentiary support for the arguments it set out in its briefs, its failure to respond to the Complaint cannot be viewed as excusable neglect.

### Meritorious Defense

■ Barclays also argues that the Default Judgment should be set aside because it has a meritorious defense. "[T]here is a 'judicial preference for adjudication on the merits [that] goes to the fundamental fairness of the adjudicatory process.'" *Price v. Am.'s Servicing Co.*, 388 B.R. 901, 906 (Bankr.E.D.Ark.2008) (citing *Oberstar v. Fed. Deposit Ins. Corp.*, 987 F.2d 494, 504 (8th Cir.1993)). In the context of a request to set aside a default judgment, courts within the Eighth Circuit typically evaluate the "judicial preference for adjudication on the merits" by reviewing for "the existence of a meritorious defense." *Union Pacific R. Co. v. Progress Rail Services Corp.*, 256 F.3d 781, 783 (8th Cir.2001) ("We have also concluded that 'the existence of a meritorious defense continues to be a relevant factor' in deciding these kinds of cases after *Pioneer Investment.*") (citation omitted). In evaluating the evidence of a meritorious defense, the court does not need to conclusively determine that the defaulting party would have prevailed, but there must at least be proof shown that the evidence would permit a finding in the defaulting party's favor. *In re Emmons*, 349 B.R. at 791. *See also In re Iowa Oil Co.*, 299 B.R. 555, 562 (Bankr.N.D.Iowa 2003) ("The Court need not conduct a mini-trial to determine the

validity of T Mart's defenses in considering relief from the default judgment. Rather, the issue is whether the proffered evidence would permit a finding for T Mart.").

■ Barclays argues that it has a meritorious defense to the Court's finding that it violated the discharge injunction. In its brief, Barclays argued that it had a meritorious defense because it sold the Plaintiffs' account in 2007, and has not contacted the Plaintiffs since that time. At the hearing on the Motion to Set Aside, Barclays also argued that it had a meritorious defense because the calls came from collection agencies, not Barclays. As further explained below, the Court finds that the evidence in the record does not support Barclays's assertion of a meritorious defense.

The only potential support for Barclays's assertions of a meritorious defense came from two statements in Mrs. Gambill's testimony. The first was Mrs. Gambill's testimony that she knew the account had been sold:

Q. But now you understand that it was sold December 4, 2007, don't you?

A. Yes, I do now.

(April 12, 2012 Hrg. Tr. 61–62). Viewed in context, however, Mrs. Gambill's statement that she knew the account had been sold amounts to nothing more than an acknowledgment of Barclays's argument. It was clear from her testimony that her only knowledge of the alleged sale came from Barclays's attorney's assertions in this matter:

Q. Well, in fact, your account was sold on December 4, 2007, wasn't it?

A. That, I did not know until all this [came] through.

A point that Mrs. Gambill clarified through the cross-examination by her own attorney:

Q. Before today's date, how did you know that Barclays had sold the debt in—had allegedly sold the debt in 2007?

A. When we [came] to court.

(April 12, 2012 Hrg. Tr. 61–62, 75). Mrs. Gambill's acknowledgment of Barclays's argument is not proof that Barclays sold the account.

■ The second piece of evidence comes from Mrs. Gambill's statement that the calls were from collection agencies, as opposed to being directly from Barclays. (April 12, 2012 Hrg. Tr. 63–65). This statement also fails to provide Barclays with a meritorious defense. An entity cannot shield itself from violating the discharge injunction by employing a third party to do the collection work. *In re McClure*, 430 B.R. 358, 365–66 (Bankr. N.D.Tex.2010) ("[T]he law is clear that a creditor that employs another to collect a debt in violation of section 524(a)(2) or section 362(a) is itself guilty of a stay violation."). Mrs. Gambill testified that the collection agencies represented they were collecting for Barclays, and that the collection calls did not begin until several months after their bankruptcy case was completed. (October 6, 2011 Hrg. Tr. 13; April 12, 2012 Hrg. Tr. 623, 75, 82). Barclays offered no other evidence to contradict this testimony, or to prove that it transferred the account prior to the Plaintiffs' discharge. Without evidence that Barclays transferred the account prior to the discharge, the transfer (even if it did occur) would have been an attempt to collect on the debt after the Plaintiffs' discharge, and in violation of the discharge injunction.

Therefore, the Court finds that the evidence provided in support of Barclays's meritorious defense fails as a basis for setting aside the Default Judgment.

### Misrepresentation

As its fourth argument for setting aside the Default Judgment, Barclays asserts that the Default Judgment is based on a misrepresentation made by the Plaintiffs. Fed.R.Civ.P. 60(b)(3) authorizes the Court to set aside an order on the basis of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." To have an order set aside pursuant to Fed.R.Civ.P. 60(b)(3), Barclays must show two things: (1) that the Plaintiffs engaged in fraud, misrepresentation, or misconduct, and (2) that action prevented Barclays from fully and fairly litigating its case. *U.S. v. Metropolitan St. Louis Sewer Dist.*, 440 F.3d 930, 936 (8th Cir.2006); *Harley v. Zoesch*, 413 F.3d 866, 870–71 (8th Cir.2005).

Barclays argues that the Default Judgment was obtained through a misrepresentation by the Plaintiffs, and should be set aside. The Plaintiffs' testimony at the hearing on the Motion for Default Judgment was that they had settled their account with Barclays prior to filing bankruptcy. At the hearing, Barclays presented evidence of a Fee Waiver program that the Plaintiffs and Barclays had entered into, but that would not have afforded the Plaintiffs a full settlement of their debt. Thus, Barclays argues that the Plaintiffs misrepresented the terms of the settlement to the Court, and that the Court's reliance on that fact in entering the Default Judgment requires that the Default Judgment be set aside.

Barclays presented evidence of the Fee Waiver program in the form of: (1) a letter from Barclays to the Plaintiffs, dated May 19, 2006, confirming their participation in the Fee Waiver program; (2) three bank statements showing payments to Barclays in the amount of $54 on May 18, 2006, June 16, 2006, and July 17, 2006; and (3) a letter from Barclays to the Plaintiffs, dated August 13, 2006, confirming that they had "successfully completed the Fee Waiver program...." (Exhibits G, H, 3, 4, and 5). However, when presented with, and questioned about, these documents during the hearing, Mrs. Gambill's testimony steadfastly remained that the agreement they had entered into was for a full settlement of the debt. The Court found Mrs. Gambill's testimony on this point credible. As such, the Court finds that, at best, the evidence provided by Barclays on this issue raises the possibility that the Plaintiffs were mistaken about the terms of the agreement they entered into with Barclays. The Court does not find the Plaintiffs' testimony regarding the settlement to have been a misrepresentation.

Even if the Court were to conclude that the Plaintiffs' statements about the settlement were misrepresentations, the Court would not set aside the Default Judgment because a misrepresentation about the terms of the settlement would not have prevented a full and fair litigation of the case—the second of the two requirements for an order to be set aside based on a misrepresentation. The validity of the Default Judgment does not turn on whether or not the Plaintiffs settled the debt. The Default Judgment was based on violations of the discharge injunction pursuant to 11 U.S.C. § 524, for attempts to collect on the debt after it was discharged in bankruptcy. The Plaintiffs received a discharge in their bankruptcy case on June 24, 2009. The debt owed to Barclays (whether fully or partially settled per the parties' prior agreement) was discharged in the Plaintiffs' bankruptcy case. Regardless of what amount (if any) the Plaintiffs owed Barclays at the time the bankruptcy was filed, any attempt to collect that debt after the discharge was a violation of the discharge injunction. Thus, Barclays's evidence does not show that a misrepresentation about the terms of the settlement would have

prevented it from receiving a full and fair litigation of the case.

 Finally, Barclays argues that the Plaintiffs were judicially estopped from asserting that they settled the debt because they listed the debt in their bankruptcy. As an initial matter, the Court notes that it is the common practice in bankruptcy for a debtor to list every conceivable debt in their bankruptcy, even if they believe that debt has been resolved through settlement. Even absent that common practice, these Debtors had a perfectly justifiable reason for including the debt in their bankruptcy. Mrs. Gambill explained in her testimony that she had included the debt because it was on their credit report. The Court does not find this action to constitute a misrepresentation to the Court, or to provide any grounds for the application of judicial estoppel. Therefore, Barclays's arguments of misrepresentation and judicial estoppel fail as a basis for setting aside the Default Judgment.

### Any Other Reason that Justifies Relief

 Barclays's final argument is that the amount of the Default Judgment requires an inequitable result, providing the Plaintiffs with a $25,000 windfall. The Court does not agree that the amount is inequitable. The Court entered the damages award after hearing evidence of the harm caused to the Plaintiffs by violations of the discharge injunction. More specifically, the testimony relied on by the Court

emphasized the Plaintiffs' struggles with high blood pressure, anxiety, depression, difficulties at work, and discord in their marriage because of the post-discharge collection attempts. Barclays has not provided any evidence to disprove that the Plaintiffs suffered the harm described in their testimony, or that the amount of the award was unreasonable in light of that harm. The Court's review of the same does not lead it to a different conclusion, but instead reaffirms that the amount of the award is not a windfall, but is just compensation for actual harms. Therefore, the Court finds that the amount awarded in the Default Judgment does not provide a basis for setting it aside.

### CONCLUSION

The Court recognizes, and has strenuously deliberated over, the appearance of unfairness that hangs over any judgment obtained through default. Our judicial system provides a default process in order to allow the system to function with fairness and efficiency.[5] Where the default process has worked a wrong, the built in relief mechanism is through a request to have the default judgment set aside pursuant to Fed.R.Civ.P. 60. However, in order to utilize that mechanism, proof of the wrong must be provided to the Court. Here, as made clear in the analysis above, there was no such proof, and the Default Judgment must be allowed to stand.

Accordingly, it is hereby

---

**5.** This case presents exactly the type of protracted, lingering resolution that the default judgment process was designed to prevent. The Plaintiffs began having trouble with their Barclays's account in 2006. They had fallen behind on their payments, and could not get caught up. Having been unable to resolve those problem, they filed bankruptcy in 2009, received a discharge, and the bankruptcy case was closed. However, after the discharge of their debt in bankruptcy, the Plaintiffs began receiving collection calls. In 2010, they came

back to the Court to file an adversary proceeding to put a stop to those collection efforts. In October of 2011, after receiving no response from Barclays, and after three continuances of their request for default judgment, the Court held a hearing, determined the amount of damages, and entered the Default Judgment. Finally, in 2012, at a hearing to determine whether the Default Judgment should be set aside, Barclays appeared without a witness, and requested a continuance.

**ORDERED** that the Defendant's Motion to Set Aside is **DENIED.**

**IT IS SO ORDERED.**